# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Case No. 14 CR 241 |
| ) | |
| JASON WEBER ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jason Weber pled guilty to a charge of theft of government funds under 18 U.S.C. § 641, and the Court sentenced him to two years of probation and ordered him to pay $65,634 in restitution. Weber has moved to vacate his conviction under Federal Rule of Criminal Procedure 33, alleging that the government withheld exculpatory evidence that pointed to an alternative perpetrator. For the reasons stated below, the Court denies the motion.

## Background

The indictment alleged that while Webber was working as a postal inspector, he devised a scheme to defraud the United States Postal Service. He would purchase insurance for packages he sent through the mail and claim that they contained valuable items including jewelry. After those packages disappeared from the mail stream, he submitted bogus insurance claims that included fabricated receipts for the valuables. In payment for these fraudulent claims, the Post Office issued about nineteen indemnity claim checks totaling more than $65,000. Though the checks were made payable to different names, they were all deposited into Weber's bank accounts.

A grand jury indicted Weber on one count of mail fraud. In December 2015, the government filed a superseding information charging Weber with one count of converting money belonging to the United States. Weber pled guilty to that charge, and the government dismissed the mail fraud charge.

On March 10, 2016, six days before Weber was to be sentenced, the U.S. Attorney's Office and the Postal Service Office of Inspector General received an anonymous e-mail that alleged that Weber's ex-wife, Zina Weber, had engaged in misconduct with a potential government witness.[1] At Weber's request, the Court rescheduled the sentencing to June 1. For the sake of convenience, the Court will refer to the defendant as Weber and to his ex-wife as Zina.

The morning of the sentencing, the prosecutor forwarded to Weber's attorney a copy of an indemnity claim check made out to Zina and dated April 4, 2016. The prosecutor informed Weber's attorney that Zina stated that she received the check unexpectedly and that she did not make the indemnity claim for which it was issued.

The sentencing hearing proceeded as scheduled. During the hearing, Weber's attorney read into the record an e-mail that he alleged Zina sent Weber in December 2015. As read by Weber's attorney, the e-mail contained vindictive comments by Zina suggesting that she had caused him to take the fall for her own wrongdoing. As indicated earlier, the Court sentenced Weber to two years of probation and ordered him to pay $65,634 in restitution. He did not appeal the judgment.

---

[1] The Office of the Inspector General investigated the alleged misconduct and ultimately determined that the allegation was unfounded.

Weber, represented by a different attorney from the one who represented him through the time of sentencing, has moved to vacate his conviction under Rule 33 of the Federal Rules of Criminal Procedure.

**Discussion**

Weber argues that he is entitled to a new trial because the government failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 1194 (1963). He first contends that the government knew about and failed to turn over fraudulent insurance claims that were nearly identical to the ones he was accused of submitting but that were filed after he was terminated from the Postal Service. Weber argues that these fraudulent claims tend to establish his innocence because they show that someone else—namely his ex-wife—perpetrated the scheme without his involvement.

In its response brief, the government points out that later on the same day that Weber entered his guilty plea, it disclosed several fraudulent insurance claims that were filed after Weber left his postal employment. Those claims were substantially identical to the ones Weber contends were withheld and included the same fraudulent receipts for valuables. In addition, the government notes that before sentencing it turned over an indemnity claim check issued to Weber's ex-wife on April 4, 2016. That check was payment for the fraudulent claim filed in January 2016. The government contends that these disclosures establish that no evidence favorable to Weber was suppressed.

Weber concedes these points in his reply brief but argues that the government failed to disclose additional facts about the claim check issued to his ex-wife. Specifically, Weber relies on the e-mail read at his sentencing hearing that his ex-wife purportedly sent to him in December 2015 gloating about his guilty plea. He contends,

3

without citing evidence, that the same e-mail address from which the December 2015 e-mail was sent was used to generate the claim for which his ex-wife received the indemnity claim check. Weber argues that the government's failure to disclose that those e-mail addresses were identical violates *Brady*.

**A.  Motion for a new trial**

Rule 33 permits the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Weber contends that he is entitled to a new trial because the government withheld exculpatory evidence that showed that his ex-wife perpetrated the mail fraud scheme without his involvement. He argues that if the government had disclosed that evidence, he would not have pleaded guilty.

Weber cannot obtain a new trial under Rule 33, however, because he pled guilty. *See United States v. Chaney*, 538 F. App'x 728, 729 (7th Cir. 2013); *United States v. Ramnarace*, 39 F. App'x 402, 404 (7th Cir. 2002) ("Because Ramnarace pleaded guilty, Rule 33 is unavailable to him . . . ."); *Hemminger v. United States*, 81 F.3d 163, 163 n.3 (7th Cir. 1996) (unpublished). Weber has not pointed to any case in which a defendant who pled guilty obtained a new trial under Rule 33. Because Rule 33 does not permit granting a new trial following a guilty plea, the Court denies the motion.

**B.  Section 2255 motion**

Acknowledging that Rule 33 may be not be the appropriate procedural vehicle, Weber suggests in the alternative that the Court construe the motion under 28 U.S.C. § 2255. *See* Weber's Reply Br., dkt. no. 79, at 3. "Any motion filed in the district court that imposed the sentence, and substantively within the scope of § 2255 ¶ 1, *is* a motion

under § 2255, no matter what title the prisoner plasters on the cover." *Melton v. United States*, 359 F.3d 855, 857 (7th Cir. 2004).

It is unclear whether *Melton* requires the Court to construe Weber's motion under section 2255 in the particular circumstances of this case.[2] Even if the Court were to do so, however, the motion would fail as untimely. Section 2255(a) permits a federal prisoner to "vacate, set aside or correct [his] sentence" if he shows that "the sentence was imposed in violation of the Constitution or laws of the United States." But such motions are subject to a one-year period of limitations, which "ordinarily begins to run on 'the date on which the judgment of conviction becomes final.'" *Clarke v. United States*, 703 F.3d 1098, 1099 (7th Cir. 2013) (quoting 28 U.S.C. § 2255(f)(1)). Because Weber did not file a direct appeal, his judgment of conviction became final on June 17, 2016, fourteen days after the court entered judgment. *See Tyler v. United States*, 12 C 9863, 2013 WL 997570, at *2 (N.D. Ill. Mar. 13, 2013) (citing *Clay v. United States*, 537 U.S. 522, 524-25 (2003)). He did not file his motion for a new trial until April 27, 2018, more than ten months after the one-year period to file a motion under section 2255 expired. Weber offers no explanation or justification for this delay.[3]

---

[2] Specifically, the Court notes that Weber is not proceeding pro se but is represented by counsel. In addition, construing the motion under 2255 would give Weber an additional potential avenue for relief rather than limiting his procedural options. Under these circumstances, recharacterizing Weber's motion would reward what is arguably an attempt to skirt procedural hurdles through an improperly styled motion—precisely what the Seventh Circuit sought to prevent in *Melton*. *See Melton*, 359 F.3d at 857.

[3] Section 2255(f)(4) allows the limitations period "to begin to run later, on the date on which the facts supporting the claims or claims presented [by the motion] could have been discovered through the exercise of due diligence." *Clarke*, 703 F.3d at 1100 (alteration in original) (internal quotation marks omitted). But Weber does not identify a later date on which he became aware of the facts underlying his claim. Likewise, it does not appear that Weber can meet the requirements of equitable tolling, which requires him to show that he has been pursuing his rights diligently and that some

5

Weber's 2255 motion would also fail on the merits.  *Brady* applies only to evidence that is favorable, suppressed, and material to the defense.  *United States v. Walter*, 870 F.3d 622, 629 (7th Cir. 2017).  But in this case the government did not suppress the fraudulent insurance claims that Weber contends prove his innocence.  Weber concedes that the government disclosed fraudulent claims that were substantially identical to the ones for which he was indicted but that were filed after he left the post office.  He also acknowledges in his reply brief that "the government did turn over a copy of a claim check allegedly provided by counsel for Zina Weber."  Weber's Reply Br., dkt. no. 79, at 1.  That check specifies that it was issued in payment for the January 2016 insurance claim that Weber contends he did not know about.

Apparently recognizing that these disclosures tend to undercut the contentions in his opening brief, Weber argues in his reply brief that the government failed to disclose a separate piece of information:  that the e-mail address used to generate the claim underlying the check issued to his ex-wife matched the e-mail address that he alleges his ex-wife used to send him an e-mail on the day of his sentencing.  Weber argues that the government's failure to disclose that the two e-mail addresses were the same violated *Brady*.

This argument lacks merit.  First, Weber may not allege a new basis for relief under section 2255 for the first time in his reply brief.  *See Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998) (holding that the district court should have found that the movant forfeited an argument in support of his motion under section 2255 by failing to make it in his initial brief).  Second, Weber points to no evidence—and the Court can

---

extraordinary circumstance stood in his way and prevented timely filing.  *See Boulb v. United States*, 818 F.3d 334, 339-40 (7th Cir. 2016).

find none in the record—indicating that the fraudulent claim in question and the December 2015 e-mail originated from the same e-mail address. Third, Weber has not presented any evidence that the government knew about the e-mail address associated with the December 2015 e-mail, which Weber must establish to prevail on a *Brady* claim. *See United States v. Jumah*, 599 F.3d 799, 809 (7th Cir. 2010).

Finally, Weber argues that even if Rule 33 and section 2255 do not authorize relief, the Court should consider his motion under its "equitable powers" because "[t]his case creates a unique set of circumstances that do not fit easily into the standard framework of a motion under Rule 33 or a § 2255 petition." Weber's Reply Br., dkt. no. 79, at 3. But motions under section 2255 often allege that prosecutors failed to disclose favorable evidence. *See, e.g.*, *United States v. Bagley*, 473 U.S. 667, 671-71 (1985); *Curry v. United States*, 125 F. App'x 67, 67-68 (7th Cir. 2005); *see also United States v. Fuller*, 421 F. App'x 642, 645 (7th Cir. 2011) (holding that *Brady* claims are properly brought in motions under section 2255). Because section 2255 is the appropriate vehicle for Weber's claims, the Court declines to order extraordinary equitable relief. *See Melton*, 359 F.3d at 857 (holding that because the petitioner's motion "fit[] comfortably within" section 2255, the petitioner could not skirt the statute's procedural requirements).

## Conclusion

For the foregoing reasons, the Court denies defendant's motion to vacate his conviction [dkt. no. 66].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 22, 2019