# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 14 CR 241 |
| ) | |
| JASON WEBER, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Jason Weber pled guilty to a charge of theft of government funds. At the time of the offense, Weber was serving as a postal inspector. The Court sentenced him to a two-year term of probation and ordered him to pay $65,634 in restitution. He has filed a petition for writ of coram nobis, alleging that "new evidence" suggests that his indictment may have been based on "malfeasance and mishandling of evidence" on the part of the government. Pl.'s Corrected Mot. at 2. For the reasons stated below, the Court denies Weber's petition.

## Background

Weber's conviction involved a scheme to defraud the United States Postal Service. Weber purchased insurance for packages he shipped via USPS under various names. He claimed that these packages contained valuable items. In fact, they did not. Using his position as a postal inspector, Weber prevented the packages he had insured from being delivered by removing them from the mail stream. He submitted to USPS

insurance claims supported by fabricated receipts for the supposedly valuable items in the packages, which triggered payments by USPS. Between 2010 and 2013—the period over which the scheme occurred—Weber received nineteen insurance payments from USPS which netted him over $65,000. Though the checks were made payable to a number of names, they were all deposited into Weber's bank accounts.

Weber pled guilty to theft of government funds under 18 U.S.C. § 641. In his plea agreement, Weber stipulated that he knowingly converted government funds in violation of the statute by depositing nineteen checks in bank accounts he controlled. However, since his sentencing hearing, Weber has maintained that it was his ex-wife, and not he, who committed the charged crime and that she did so without his knowledge. *See United States v. Weber*, No. 14 CR 241, 2019 WL 1317751, at *1 (N.D. Ill. Mar. 22, 2019) (Kennelly, J.) (recounting Weber's allegations at sentencing against his ex-wife). His theory was that his ex-wife, Zina Weber, caused him to take the fall for her wrongdoing. But Weber had no proof of his innocence and offered little proof to implicate his ex-wife.[1]

In 2018, Weber moved to vacate his conviction under Federal Rule of Criminal Procedure 33 or 28 U.S.C. § 2255. Armed with what he called newly discovered evidence, Weber alleged that the government committed a *Brady* violation by withholding exculpatory evidence that pointed to an alternative perpetrator, his ex-wife. *See Brady v. Maryland*, 373 U.S. 83 (1963). The Court denied that motion after

---

[1] Before Weber's sentencing, the U.S. Attorney's Office and the USPS Office of Inspector General received an anonymous e-mail that alleged that Weber's ex-wife had engaged in misconduct with a potential government witness. The claim was investigated, and officials concluded that the allegation was unfounded. *See Weber*, 2019 WL 1317751, at *1.

2

concluding that he could not obtain relief under either Rule 33 or section 2255. *See Weber*, 2019 WL 1317751, at *2–3.

In 2020, Weber submitted a "renewed" motion to vacate his conviction under section 2255. Although Weber, in part, recycled the arguments from his 2018 motion, he also submitted additional evidence. In his view, this newer evidence not only further demonstrates his wife's culpability, but also demonstrates that two others—his former neighbor, Lawrence Ballack, and a prosecutor in his case, William Novak—were all "perpetrating the scheme for which he was convicted." Pl.'s Renewed Mot. to Vacate at 2–3. Weber has since clarified that his 2020 motion should be construed as a petition for writ of coram nobis.

## Discussion

A petition for writ of coram nobis is "a rare form of collateral attack on a criminal judgment." *United States v. Delhorno*, 915 F.3d 449, 450 (7th Cir. 2019). Though it is like a petition for writ of habeas corpus and affords the same relief, coram nobis is available only to defendants who are out of custody and therefore may no longer petition for habeas corpus. *Id.* at 452. Coram nobis is available to correct factual and legal errors in criminal cases where the defendant: (1) alleges an error "of the most fundamental character" enough to "render the criminal conviction invalid"; (2) provides "sound reasons" for his "failure to seek earlier relief"; and (3) demonstrates that he "continues to suffer from his conviction even though he is out of custody." *Id.* at 450–451 (internal quotation marks omitted).

The Court begins (and ends) its analysis by considering whether Weber has presented a fundamental error. The Seventh Circuit has clarified that a "fundamental

3

error that invalidates a criminal proceeding is one that undermines our confidence that the defendant is actually guilty." *United States v. Wilkozek*, 822 F.3d 364, 368 (7th Cir. 2016); *see also United States v. Keane*, 852 F.2d 199, 205–06 (7th Cir. 1988) (denying defendant's petition for writ of coram nobis in part due to his failure to demonstrate that a "fundamental defect that produce[d] a complete miscarriage of justice" occurred in his case). "Only errors of this magnitude justify the cost of putting aside the interest in finality." *Wilkozek*, 822 F.3d at 368.

Weber asserts two fundamental errors. First, he claims that he has evidence of his actual innocence. Second, he asserts that the government failed to disclose exculpatory evidence in contravention of *Brady*. *See United States v. Walker*, 746 F.3d 300, 306 (7th Cir. 2014) (stating that the government violates *Brady* when it "[fails] to disclose favorable evidence upon a defendant's request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (internal quotation marks omitted)).

Weber bases his claims of fundamental error on the new evidence he has submitted with his brief. He contends that this evidence demonstrates not only that the insurance-fraud scheme continued after his conviction but also that his ex-wife, Novak, and Ballack were all involved in the same kind of scheme for which he pled guilty. Weber attached the following evidence to his motion. First, he submitted an eBay receipt—dated December 20, 2017—for an Apple Watch sold by "Billy Novak" for $290.00. *See* Corrected Ex. A (dkt. no. 96). Second, Weber offered a receipt for USPS insurance purchased for a package sent on December 22, 2017. *See* Ex. A (dkt. no. 86). Third, Weber presented a photocopy of the front-side of a USPS drafted check

4

dated January 23, 2018 and made payable to "W.P. Novak," in the amount of $297.20. Corrected Ex. B (dkt. no. 96). Fourth is the front side of another check, also dated January 23, 2018, from Zina Weber and made payable to the American Airlines Credit Union. See Ex. C (dkt. no. 86).[2] The final attachment is a photocopy of a Visa debit card with the name "Lawrence Ballack" on it. See Ex. D (dkt. no. 86).

In explaining how this evidence demonstrates his innocence, Weber presents a series of allegations. He claims that his ex-wife, Novak, and Ballack worked together to defraud USPS. He asserts that the eBay receipt is the "same doctored receipt" he has previously accused his ex-wife of using. Weber further alleges that though no eBay purchase was ever made, someone purchased insurance for a package using that receipt (he does not say who) and that Novak received a $297.20 payout from that claim.

Weber then says that on the very day Novak received the check, Weber's ex-wife made a loan payment in the same amount, $297.20—suggesting, without saying, that these two events must be related. He further asserts that the credit card used to purchase the USPS insurance belonged to Ballack and that Ballack must have used Weber's IP address to perpetrate the crime for which Weber pled guilty to. Weber recognizes that all this alleged conduct would have occurred in 2017 and therefore would have taken place after the offense conduct that led to his indictment. But he asks, if "Novak was committing this offense with Zina Weber and Lawrence Ballack in December of 2017, who could even begin to say that his handling of the prosecution was in good faith?"

---

[2] Both checks have the same routing and account numbers.

If true, Weber's allegations would be stunning. But both his allegations and his evidence are riddled with deficiencies. For example, Weber has offered nothing to show that the checks, receipts, or copy of the credit card are what he claims they are. None of the evidence he has presented is authenticated. And Weber does not even make an effort to explain, let alone demonstrate, how he came to be in possession of these items, when they came into his possession, and who (if anyone) provided them to him.[3]

Even if his evidence were not deficient in these ways, Weber has offered no cohesive explanation for how the evidence establishes his allegations. He theorizes that his ex-wife, Novak, and Ballack worked together to continue the insurance-fraud scheme, but there are more than a few gaps in the story he has proffered. For example, Weber contends that Ballack—a man with no apparent connection to the case before the present motion—accessed Weber's IP address. Yet, Weber does not explain when or how Ballack supposedly did this. Nor does he explain how he knows no eBay purchase was ever made, how he knows that the prosecutor, Novak, actually received the insurance claim check, or why he believes the claim check and his ex-wife's loan payment are related. Weber never even identifies who he contends purchased the insurance for the lost package.

In short, Weber has not shown that he has genuine evidence to support his allegations. Nor has he provided the Court with a credible explanation of how his evidence, even if authenticated, supports his allegations. As a result, Weber has not

---

[3] Though the Court does not reach the sound-reasons-for-delay requirement for coram nobis, it is worth noting that this fact would imperil Weber's ability to satisfy it.

6

established that there was a fundamental error that would undermine confidence in his conviction—which, again, came on a voluntary plea of guilty. See *Wilkozek*, 822 F.3d at 368. On the record before the Court, he has not shown a miscarriage of justice that would warrant disturbing the legitimate interest in the finality of his conviction. See *Keane*, 852 F.2d 199, 205–06.

## Conclusion

For the reasons stated, the Court denies Weber's petition for writ of coram nobis [dkt. nos. 86 and 99].

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 2, 2021